Good morning. May it please the court, my name is Eitan Kaslianich. I am representing Dennis Robinson in this appeal. In October 2009, Robinson suffered a psychotic break, which led to several consecutive psychiatric hospitalizations spanning more than five months. And although after five months in the mental hospital, he was doing somewhat better, in fact he was doing quite a bit better, he still wasn't functioning well enough to return to full-time employment, competitive employment. Now, after he left the hospital, he began getting treatment in the mental health system, but that treatment involved medication, and the medication caused him to gain a stroke, and he just, he refused to take it after that, and he just stopped going to the doctor and just stayed home to avoid everything. So the main issue before the court involves whether or not the ALJ properly determined that substance abuse was a factor material to Robinson's disability. Would you concede, though, that the ALJ analyzed Mr. Robinson both with his substance abuse and without the substance abuse? He did, which we get cases where the ALJ doesn't do that. There is a procedure they have to follow, which is first you look at everything, and if you look at everything and the person is disabled, then you have to look at it again and say, well, let's first go through, that's what he found, he found he would qualify. Absolutely, he found he was disabled. Then he goes through to do the second analysis. Now, what's interesting, and that's the problems in that second analysis, let me point, turn it to Robinson's testimony and his credibility, because the ALJ in his overall analysis said, Robinson's credible, he's got this, you know, he's got some really serious problems going on that involve very bizarre thinking, and it's manifested throughout the record, and it's manifested in his testimony. You read his testimony, and it just, it goes in odd directions. So the ALJ found that credible. Then he said, but he's not credible when he talks about how he is when he's not using DNA, but he was just telling how it is. These are the crazy thoughts he's having. I mean, with people that use drugs, though, sometimes, I mean, there's always a little suspicion about their reporting about what they're using and how often they're, like he said, he was using marijuana once a month or something, and, you know. It is hard to tell, and so, yeah, I mean, so one of the other issues is because he had basically pulled away from the mental health system because of his bad side effects, there wasn't anyone treating him. There wasn't evidence to show, well, how's he doing now? And at his hearing, his attorney, you know, it's obvious, the judge discussed this with his attorney, and the attorney made a formal request. Well, this is, would it be appropriate, it would be appropriate here to do a consultative evaluation and figure out, how is he doing? And he did it under advisement and then didn't do it. Now, I think that because of the nature of the, and the complication and the difficulty of trying to separate out, you know, you already found this guy is disabled, but now we're saying he's not because he, because. Well, if you use, if people use a lot of drugs, they're not going to be highly functional. I mean, we've seen this with lawyers that explain why it rejected Dr., I think, Codner's opinion that Robinson's mental health symptoms may be independent of his substance abuse. And then, but then Dr. Codner, like Dr. Lincolns, did not have the opportunity to review all of the medical records, as Dr. Codner saw Robinson fairly early on in his treatment. So, I guess what I'm coming to is, why wouldn't the ALJ's partial rejection of Dr. Lincoln's opinion on the ground, on that ground, not apply equally to Dr. Codner's and thus make the ALJ's failure to discuss Dr. Codner's opinion harmless? I know that's a lot there, but I think you follow me. Okay. So, the, you know, honestly, Dr. Codner, Dr. Codner was treating Robinson in the early stages, well, kind of, I think he'd already been hospitalized for a month, but it was in the relatively early stages of the psychiatric hospitalizations. And, and opined that it was, it was not, this is not a drug problem that he's showing here. This is an underlying mental illness. And there's no question, the judge agreed that he has mental illness aside from the D.A. And it was not a drug problem. So, I'm not sure that Dr., was Dr. Codner's treatment fairly brief, five days? Yes, it was. So, he was just one of the treatment team, but one of a string of them, all of whom agree that he was doing pretty badly during the psychiatric hospitalization. I think the bigger error in the ALJ's analysis of the medical evidence, involves his treatment of the, the evaluation by Sam Martinez, who was a master's degree social worker, and there's been a large and steep gap during one of the hospitalizations, who evaluated Robinson and said he was severely impaired in many different ways. And he, in his evaluation, detailed all of the different problems he was having. Now, this was after he'd been clean and sober for a month, I think, or longer. So, he was, you know, away from drugs, away from alcohol, away from everything, and he was just not doing well. And it was well documented, the ALJ's analysis of the medical evidence, involves his treatment of the medical evidence, and there's been a large and steep gap between the treatment of the medical evidence and the evaluation of the medical evidence. So, I'm not sure that Dr., was Dr., Codner's treatment fairly brief, five days? Yes, it was just one of a string of them, all of whom agree that he was doing pretty badly during the psychiatric hospitalization. I think the bigger error in the ALJ's analysis of the medical evidence, involves his treatment of the medical evidence, and there's been a large and steep gap between the ALJ's reasons for rejecting Mr. Martinez's opinion don't withstand scrutiny. Because, for example, he rejected his opinion because he's not an acceptable medical source. But that's not a valid reason to reject a, an other source, medical source's opinion. The mere fact that they're It is a consideration, is it not? It is absolutely a consideration. But, even in the, in SSR 13-2P, which is the current explanation for how they're supposed to analyze these cases, it shows that you, you have, that you have to look, an ALJ, and this isn't just theirs, SSR 06-03P also says this, an ALJ has to consider the opinions of other source, medical sources, and sometimes those opinions are entitled to more weight than the opinions of acceptable medical sources. All right, I have a, just a few questions for you. So, we, when we get to the second analysis, your, your, your position is that the most fundamental error is, is failing to give due credit to Martinez? Well, the, I think it's two things. If that's your argument, I don't find that, that's probably not going to get you to home base. Well, there's, there's, first you've got Mr. Martinez, there was no valid reason for rejecting his opinion. When he got out of the mental hospital, he was treated by, I'm not going to get that name right into my head, Dr. Sampson. And Dr. Sampson gave him a GAF of 45 and noted that he was failing with the medications, he was having the side effects. So, it documents why he stopped taking them. But really what this boils down to then is his testimony, which was found to be credible. Well, maybe. So, I think that it's, it's contradictory to say, I find him credible, here's his. Let me ask you this. Which is I, I don't really understand how the, how the Social Security Administration works, but they, the ALJ said that with Dr., with respect to Dr. Likens, Lincolns, whatever his name is, Likens, Lincoln? Yeah, Likens. Likens. He was going to give him good weight. Wasn't, he didn't discredit him, he gave him good weight. What does good weight mean? I can't, I don't, I can't tell you that. Is there anything in the regs, is there anything in the regs, the pump, anything that says how, what, what does good, does that mean? I mean, it's a good weight, I mean, you know. It sounds pretty good. It sounds pretty good. I, I guess it's better than bad weight. What does significant weight mean? Well, significant weight sounds like more than good, perhaps, and it probably is. I, I've always had a problem. What if he just says, I find him credible? Is that good? Is that? Well, wait, but when you're talking about doctors, credibility doesn't enter into the picture, because doctors are presumably credible. Well, they, well, it could be, good weight could be if someone's an expert and someone's a GP, or something like that. And they're talking about, you know, eye surgery, as opposed to a family practice doctor, you know, that. Now, I mean, you still could find one more credible than, you could, still could put more weight on one than the other, but you, if it, if you weren't going with a specialist, you'd probably have to explain that. You know, I can't, it's like. Was Likens a mental health expert? Yes, he was a psychiatrist. How about, how about the other, Kottner? Yes, they were psychiatrists working. How about Samson? Samson is a psychiatrist working at a mental health treatment, outpatient mental health treatment center in, in Olympia. So. How much weight did he give to, to Dr. Samson? You know, the thing is, I think he, he basically, the thing is, Dr. Samson didn't state an opinion. And none of these people really did. It wasn't that clear for them saying he can't work. Other than Mr. Martinez stated a clear opinion that this guy absolutely cannot work. He's saying crazy things. But what about, okay, how important are the facts, which I think this was a fact in the record, that Robinson did not seek treatment in the year leading up to the hearing and that he performed three months' worth of community service seemingly without significant issue? How important is that? He was performing the community service under, they were basically an understanding employer, and if they, he didn't perform it. Is it relevant, though? I mean. I don't think so, and the reason I don't think it is. Did the ALJ think it was relevant? Yes, he did. He thought it was, well, you know, that's a funny thing. He thought it was relevant, and yet he found, he found him credible. The credibility analysis boggles me, too, here, because if somebody's credible, they're honest. He's telling the truth about what his situation was. He went and he did his work, and he testified, well, they gave me special, you know, they were pretty easy on me. Well, but I could be credible and say that I'm a really good writer, but then everyone that looked at, but I believe that, but then everyone that looks at my writing thinks I'm not, you know, so that might not, I might not get, there might not be given any weight, but I'm not, I'm not lying. I think that, or people think they can sing, and they can't sing. What's interesting about the credibility here is that when, what he was describing was crazy stuff. At his hearing, there was a six on the microphone, and he had to stop the hearing and ask to cover it up because he couldn't look at the six. He then started telling these stories about sixes he kept encountering, and he's just got, he's got a psychotic disorder that's untreated, and it's untreated because he doesn't have insight into how he should be treating it, and because he failed the meds because they were causing side effects that made him unable to tolerate them. Well, what's the, what's the situation if a someone, if someone can be okay and they take their meds, but they refuse to take their meds? Do they automatically get a, are they automatically deemed disabled because? If the side effects are so bad that they can't tolerate them, then that's something that has to be considered. All right, but if, but some people just don't like taking medication, so they don't take it, and then they're goofy when they're not taking it, and everyone else thinks they're better when they are, but. Some people have so little insight into their mental illness that they don't understand that they need the medications, and under circumstances like that, yes, they're disabled because that's part of their mental illness. Garrison discusses that. I would like to reserve some time for rebuttal. You've got it. Thank you. Good morning, and may it please the Court. Again, Jeff Staples for the Commissioner, asking that you affirm the ALJ's decision in this matter, or the district court's judgment. Different reasons. Different reasons, absolutely. This is a medical opinions and credibility case. So I think there's been a little bit of confusion about what is a credibility finding. The ALJ in this matter considered all of Robinson's impairments together, including the substance abuse, and said that to the extent that he testified that these impairments, including the substance abuse, were disabling, that testimony was generally credible. However, it's not inconsistent for the ALJ to then go on and say, however, to the extent that he testified that the mental impairments absent substance abuse were also disabling, he's not credible. And then the ALJ went on to provide several valid reasons for that second finding. Some of the most important reasons that the ALJ gave were that Robinson improved with treatment to the point and also received no treatment for an entire year leading up to the hearing. Those are valid credibility considerations and can reasonably suggest that a person's impairments are not as limiting as they allege. Robinson also performed manual labor five days per week within his supervisor's tolerances. This at least reasonably suggests some ability to work beyond what Robinson was alleging as disabling mental impairments. He performed this work for three months, and this showed that he was more able to work than he alleged. So the ALJ said he could be a landscaper, packager, or housekeeper? That sounds right, Your Honor. So could you explain? Here's the trouble that I have. Maybe you can help me understand. I'd be happy to. What the ALJ did. So he gives Dr. Likens, he says, I'm going to give him good weight. Yes. Good weight to what he testifies. He doesn't really discuss Dr. Kottner. That's correct. Right, okay. So when you get to the second analysis where he's got to figure out whether or not his substance abuse is a material factor, he talks about all the other doctors, but he doesn't at all bring in Dr. Kottner and Dr. Likens. Correct. This seems to me to be a serious omission. So, first of all, the ALJ... That's not harmless. Because, you know, here's what they had to do, the ALJ. I mean, I don't know how he does it. This guy suffers from serious psychological problems, mental problems. He has substance abuse problems. And you've got to try and separate it out. I don't know how you do that. It's a difficult question. It's difficult. So I don't know why these other two doctors weren't also factored in in the second analysis, particularly in paragraphs of the opinion 12 and 13. So with regard to Dr. Likens, the ALJ did discuss his opinion in the first stage of the DNA analysis. So the ALJ did consider and discuss Dr. Likens' opinion, which was essentially... Giving it good weight. Yes. What does that mean in the parlance of the Social Security program? Well, like Your Honor pointed out, there's not like a list of choices of amounts of weight to give. I agree with that. I don't know about my colleagues, but I've had to judge credibility for a number of years at times. I don't think I've ever used the term good weight a lot either. Didn't he also discount Dr. Likens because he said Dr. Likens did not have the opportunity to review the entire record? So what Dr. Likens essentially said was that Robinson had chronic psychotic illnesses that persisted even absent his drug abuse problems. And the ALJ's decision comports with that finding because the ALJ also found that Robinson, even in the absence of his substance abuse problems, still had severe mental impairments that caused additional functional limitations. So the ALJ accounted for that opinion at both stages of the analysis, both in finding that Robinson suffered from disabling mental impairments, including substance abuse, and that even factoring out the substance abuse, he still had mental impairments that still caused serious functional limitations. But it's not inconsistent with that to find that those mental limitations were not disabling because neither Dr. Likens nor Dr. Codner said that his mental limitations were disabling absent the substance abuse. All they said was he still has mental problems, even if you factor out the substance abuse. So when the ALJ goes to the second stage of the analysis and says, yes, I agree with that, I give it good weight, whatever that means, I agree with it, my decision accounts for those opinions. I'm not sure that it does. That's the problem that I have. It certainly doesn't account for Dr. Codner. Well, Dr. Codner said that what Dr. Codner really said was that... But I'm talking about what the ALJ said about Dr. Codner, and the ALJ does not discuss Dr. Codner at all. Yes, and under the case law, the ALJ needs to discuss why significant probative evidence was rejected. So if the ALJ is not going to reject this opinion, it's not an error to discuss it, although it would be better to discuss it and say what you're doing with it. It's obvious what the ALJ was doing with it, which was agreeing with it. Why isn't this a Marsh problem? Because in Marsh, the opinion at issue described limitations beyond what was in the ALJ's decision. So when you don't discuss that, then we don't know what you thought of those opinions, and you didn't account for it in the decision. But here, the ALJ accounted for Dr. Codner's opinion because what Dr. Codner said was that Robinson's bipolar was not primarily substance-induced. And the ALJ agreed with that and said, yes, I agree, he still does have mental impairments, and they still do cause limitations. But what neither Dr. Codner nor Dr. Lykins said was that his mental impairments, absent substance abuse, cause functional limitations beyond those the ALJ identified. So that's why the ALJ's decision is fully consistent with these two opinions. All they said was he still has mental impairments. And the ALJ agreed and went on to do that second-stage analysis and said, yes, he still has mental impairments even when he stops abusing substances. However. Okay, so if I'm understanding your argument, I mean, if we wanted to spell it. I apologize to the audience. No, no, no. If I'm understanding it, that essentially you're saying that the ALJ didn't make any legal errors, and it's a really hard case, and the ALJ did what the ALJ had to do, and even if we would have decided it differently, we don't get to reweigh it. Absolutely, Your Honor. Substantial evidence is an extremely deferential standard of review. So unless there's some sort of legal error, and here there isn't. Well, but I don't see how he can have it, given the critical decision that had to be made here. I don't know how the ALJ can, in that second analysis, I'm only talking about the second analysis. Yes. How in that discussion, in that analysis, he can completely disregard Lykin, having given Lykin good weight, for whatever that means, and failing to discuss Cotner in the second part of the analysis. It was critical information bearing upon his psychological, you know, the source of his mental impairments. Yes, Your Honor, but the ALJ didn't disregard Dr. Lykin's or Dr. Cotner's opinions because the decision is not inconsistent with those opinions. It would help if he would discuss them, and that's what Marsh kind of goes to, the need to discuss relevant, important evidence. Yes, Your Honor, and in Marsh, the reason that the ALJ's error in that case in failing to discuss that evidence, the reason that was an error and the reason that that error was harmful in Marsh was because the opinion at issue described limitations beyond what were contained in the ALJ's decision. So if you de facto reject an opinion but don't say why, then that is most often going to be a harmful error, unless there's some other factors that weren't present in Marsh. But here the ALJ did not reject either Dr. Lykin's or Dr. Cotner's opinion. There's nothing in them that the ALJ's analysis fails to capture. Okay, Lykin and Cotner were earlier than all of the evidence. That's correct. Was that ever said at any point, or is that just a part of the record, that they were earlier before some of the other evidence developed? That's definitely a part of, as the ALJ goes through and analyzes the medical evidence, and particularly with Dr. Lykin's, it was brought up that he wasn't accounting for some of the other evidence. So what did the ALJ say about this year not taking medication in the community service? Those were credibility factors that went to how reliable are Robinson's statements about his own limitations. And so those are factors that tend to show that a person's limitations are not as significant as they allege. So if you say you have such severe... So was it only considered for that purpose, or was it also considered as to what Mr. Robinson's capabilities are? In assessing Robinson's capabilities, the ALJ looked at the record as a whole, and the ALJ looked at the medical evidence and looked at these other factors suggesting that Robinson retained the ability to work within the residual functional capacity that the ALJ identified. And substantial evidence did support that determination in the form of medical opinions from Dr. Ziskin, Dr. Sampson, Dr. Donohue, and Dr. Postavoy. And really the only evidence on the other side of the scale was Mr. Martinez, as an other source opinion, whose opinion the ALJ provided several reasons to reject. Well, it's easier to reject sort of a non other source. That's correct, Your Honor. Government's called other source. And the reasons for rejecting another source opinion need only be germane.  That's correct, Your Honor. It's a different standard completely. But for me, I do think that there was error here in him failing to discuss. And the question then becomes, is it harmless? And you say, well, it is harmless, because if you look at everything, it really did touch on it. Well. But this was a critical ñ I mean, the ALJ even acknowledged that, you know, that his condition would ñ the disorder would persist, even if the claimant's substance abuse were to stop, although to a lesser degree. I mean, it's a very fine determination that had to be made here. Well, that's ñ I think Your Honor hit the nail on the head there. That's exactly what the ALJ said. And that's also what Dr. Codner said. And that's pretty much the extent of what Dr. Codner said. Dr. Codner did not describe a bunch of functional limitations that would persist in the absence of Robinson's substance abuse. So to the extent the ALJ said exactly what you ñ the way you just put it, and that's a fair characterization, I think that's also a fair characterization of Dr. Codner's opinion. So my argument is that that makes it not error to not discuss Dr. Codner. But to the extent it is error, it's certainly harmless, because the ALJ fully accounted for that opinion by finding that Robinson did, in fact, have mental impairments that persisted absent his substance abuse. That's what Dr. Lykin said, and that's what Dr. Codner said, and that's what the ALJ found. So because Dr. Codner's opinion contains no limitations, contains no other assessment that in any way contradicts the ALJ's analysis that goes on to describe limitations beyond what the ALJ found. That's why, to the extent it is error, it's definitely a harmless error. Okay. Didn't the ALJ at least acknowledge Dr. Lykins in conducting the second analysis, specifically his November 2009 examination? That's correct. I believe that was in both stages of the analysis. Paragraph 11. I believe you're correct, Your Honor, and so I think what that goes to show is that, look, I'm agreeing with this doctor. I'm agreeing that he does have limitations, and even though this doctor may not have been fully aware of the extent of his drug abuse prior to his period of sobriety, but I do agree that he does have some serious, some severe mental impairments that do cause serious limitations. Nevertheless, these limitations, because the ALJ went on to Step 5, these limitations don't preclude Robinson from working at unskilled, relatively simple jobs, which he had shown that he was able to do for at least a three-month period before the ALJ's decision. Okay. Because substantial evidence supports that finding, we ask that the Court affirm. Thank you. We appreciate your argument. Let me start by saying that addressing the Marsh issue, I think you're correct about the error here, because with regard to Likens, what's interesting about both Dr. Likens and Dr. Codner isn't just that they, you know, they evaluated him in the psych ward and treated him in the psych ward, but they gave him phenomenally low GAF scores. Now, I know a GAF score is just a score, but it does have to be considered. Dr. Likens gave him a 20. Codner, a 22. This is really, this is very, very serious dysfunction, and it explains why he ended up being in the psych ward for almost five months. That's not, this is a serious problem, and throughout that time he wasn't taking drugs or alcohol. He was still dysfunctional. Finally got him stabilized, and then the meds didn't work. The, it is a problem that the ALJ didn't address Dr. Codner's opinion, because we don't really know how he weighed it. It is a problem that Dr. Likens gets good weight, but doesn't really, the ALJ doesn't really take it, consider the fact that, yeah, gave him a GAF of 20. Now, with regard to the testimony, Robinson didn't testify, well, I'm on drugs, I'm like this, and when I'm not. He just testified about his activities, basically, and the ALJ said, okay, I find that credible, except he's more functional when he's not using, but there's no evidence to support that. It was just the ALJ just saying it, basically. The, and the fact that Likens didn't review later evidence is really irrelevant, because he's, you know, you evaluate someone when you see them, and there isn't actually the most recent evidence, there's very little, but it does show that he was continually dysfunctional. And finally, as a final note, I think it's his inability to even shop by himself, because he testified about, he'd go in the store and he would just, he couldn't follow through. He couldn't even do something as basic as that by himself. So in conclusion, I just ask you to remand this case for a new hearing so that he can make an ALJ do a complete evaluation of all the evidence. Okay. Thank you. Thank you, counsel. We appreciate your arguments. They're very helpful.
judges: Paez, Callahan, Selna